[Cite as *Ransdell v. Ransdell*, 2014-Ohio-3001.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| WANDA RANSDELL | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 25831 |
| v. | : | T.C. NO. 09DR551 |
| DONALD L. RANSDELL | : | (Civil appeal from Common Pleas Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____3rd_____ day of _____July_____, 2014.

. . . . . . . . . .

WANDA RANSDELL, 747 Weinland Drive, New Carlisle, Ohio 45344
        Plaintiff-Appellee

CHARLES D. LOWE, Atty. Reg. No. 0033209, 8087 Washington Village Drive, Suite 102, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Donald L. Ransdell, filed July 18, 2013. Donald appeals from the June 21, 2013 Decision and Judgment of the Domestic Relations Court, issued following Donald's divorce from Wanda Ransdell, that overruled in part, and sustained in part, Donald's objections to the Magistrate's Decision and

denied the motion of Wanda Ransdell for contempt based upon Donald's failure to refinance the parties' marital residence; denied Wanda's motion for attorney fees and court costs; and granted Wanda's motion for modification of spousal support. We note that Wanda did not file a brief herein.

{¶ 2} The record reflects that Wanda filed a Complaint for Divorce on May 20, 2009, in which she alleged that the parties were married on September 7, 1988 in Las Vegas, Nevada, and that no children were born as issue of the marriage. After a hearing on July 29, 2009, a Final Judgment and Decree of Divorce was issued. The decree provides in relevant part as follows:

* * * Furthermore, the plaintiff, Wanda Ransdell, has had numerous and lengthy discussions with plaintiff's counsel regarding issues such as spousal support, the continuing jurisdiction of this Court relative to the issue of spousal support, a division of the parties['] assets and debts and furthermore, the plaintiff's counsel has advised the plaintiff, Wanda Ransdell, on multiple occasions to seek the assistance of a bankruptcy lawyer to resolve any and all questions and/or issues which she had relative to a meeting that she and the defendant, Donald L. Ransdell participated in with attorney Keith Fricker, who was being consulted by the defendant, Donald L. Ransdell relative to multiple issues including the bankruptcy of several different companies as well as a personal bankruptcy. With these issues in mind and after having had a full opportunity to discuss these issues with an attorney of her choosing, pursuant to the ex-husband, Attorney Steven Yuhas and various other individuals, the

plaintiff, Wanda Ransdell has agreed to a settlement of all issues in her divorce action in exchange for a cash property settlement and various other considerations confirmed in the body of this final judgment and decree of divorce. In consideration thereof, the defendant, Donald L. Ransdell has agreed to assume any and all debts and liabilities associated with Ransdell Trucking, Don Ransdell Trucking, Signs-N-Tyme Company, as well as all of the parties' personal debt.

Upon due consideration of the above mentioned items, the Court finds that the plaintiff, Wanda Ransdell * * * has carefully reflected upon and therein decided to accept a lump sum settlement as well as various other considerations at this time despite the concerns raised by her attorney, Steven Yuhas relative to the authenticity of the statements made by Defendant Donald L. Ransdell relative to his pursuit of bankruptcy, relative to his companies, as well as various other previously discussed concerns raised by Attorney Yuhas. Nonetheless Plaintiff Wanda Ransdell has reached a full and final settlement with Donald Ransdell based upon their discussions and the plaintiff, Wanda Ransdell is entitled to a final judgment decree of divorce as prayed for in her pleadings.

* * *

1. SPOUSAL SUPPORT:

A lump sum payment of spousal support of $60,000.00, has been made to the plaintiff by the defendant. * * * No additional payment of spousal support will be made or has been made by Defendant Donald L. Ransdell by agreement of the parties, and the Court shall not return (sic) jurisdiction over the issue except as

described in Paragraph 9, on Page 6.

\* \* \*

4.  REAL ESTATE:

The defendant, Donald L. Ransdell owns a home located at 6761 Locustview Drive, Huber Heights, Ohio 45424. The defendant Donald L. Ransdell, shall retain all rights, title and interest in said real estate free and clear of any claims of the plaintiff, Wanda Ransdell. The defendant, Donald L. Ransdell shall be solely responsible for the timely payment of any and all debts associated with said real estate, including, but not limited to, any and all mortgages, mortgage payments, promissory notes, promissory note payments, real estate taxes, insurance, utilities and assessments, and he shall further indemnify and hold the plaintiff harmless and blameless thereon. The defendant, Donald L. Ransdell shall use his best efforts to refinance the existing mortgage and all notes and/or mortgages associated with said real estate so as to remove the plaintiff, Wanda Ransdell of any and all right as a co-obligor therein. The defendant, Donald L. Ransdell shall complete a refinancing of said property at a date no later than six months after the filing date of the final entry and decree of divorce, and at that time his attorney, and/or an attorney of his choosing shall prepare a quit claim deed, which the plaintiff, Wanda Ransdell will sign relinquishing all rights, title, and interest in said real estate to the defendant, Donald L. Ransdell. The defendant, Donald L. Ransdell, has communicated to the plaintiff, Wanda Ransdell he is contemplating and intends to file bankruptcy on both a business and

personal level, and the defendant has further intimated that he will be fully responsible for any and all debt associated with said marital residence under all circumstances. * * *

* * *

8.    BUSINESS DEBT, PERSONAL DEBT, AND OTHER MARITAL DEBT:

The defendant, Donald L. Ransdell is the owner of Signs-N-Tyme, * * * Ransdell Trucking, * * * , Don Ransdell Trucking * * * as well as additional unsecured and secured debt. The defendant, Donald L. Ransdell shall hold the plaintiff, Wanda Ransdell harmless and blameless relative to all business debt, corporate debt, personal debt, marital debt of the parties, be it secured and/or unsecured debt of any kind. * * *.

[Donald's] liabilities include, but are not limited to the following:

1.   Ransdell Trucking;

2.   Donald Ransdell;

3.   Don Ransdell Trucking;

4.   Signs-N-Tyme;

5.   Donald Ransdell personal debts;

6.  Various accounts with Fifth Third Bank under the following accounts:

[four account numbers are listed]

Furthermore, husband shall be fully responsible for the additional liabilities to Bank of America in the amount of $35,000.00, to Fifth Third Bank in

the approximate amount of $40,000.00, to Key Bank in the approximate amount of $27,800.00, as well as two additional unsecured debts to Capital One with a total balance of approximately $50,000.00, in two separate accounts. Furthermore, defendant Donald L. Ransdell shall be fully and completely responsible for any and all debt associated with his business.

9.   ADDITIONAL MISCELLANEOUS AGREEMENTS:

The parties agree and the Court also specifically intends that the wife will be free of all liabilities which have been allocated to the defendant and the defendant will pay those liabilities in full, holding the plaintiff, Wanda Ransdell blameless and harmless with regard to said previously mentioned debts and also indemnifying her if the defendant fails to honor his obligations.  If, for any reason, the plaintiff, Wanda Ransdell is for any reason denied any of the promised relief as is detailed in this agreement due to a bankruptcy being filed by the defendant, Donald l. Ransdell, and/or any other implications of actions taken by the defendant, Donald L. Ransdell, this Court has determined that the affect will be to cause the plaintiff, Wanda Ransdell to be in need to (sic) spousal support. Therefore, the issue of spousal support shall be subject to continuing jurisdiction of the Court for the sole purpose of establishment or modification of spousal support in both amount and duration in the event that the defendant obtains relief in bankruptcy court for any debt and/or any obligation which ultimately causes the plaintiff, Wanda Ransdell to pay any of the above mentioned debts which would effectively modify the property division between the parties, thus effecting the

need for support by the defendant to the plaintiff.

This continuing jurisdiction on the issue of spousal support as it relates to payments of debts shall continue until such time as all marital liabilities, corporate liabilities, personal liabilities and all of the liabilities associated with the previously mentioned debts that the defendant, Donald L. Ransdell shall pay are satisfied in full with no implication and/or monetary cost to the plaintiff, Wanda Ransdell.

10.  ATTORNEY FEES:

Each party shall be solely responsible for his or her own attorney fees incurred as a result of these proceedings.  Plaintiff's counsel has recommended on multiple occasions that the plaintiff, Wanda Ransdell seek the advice of a bankruptcy attorney and has provided both the names of bankruptcy attorneys and various other attorneys to the plaintiff relative to any questions that she may have regarding the issues in this case.

{¶ 3}   On May 23, 2011, Wanda filed a "Motion for Contempt and Other Relief," in which she asserted that Donald failed to refinance the property at 6761 Locustview Drive, and that she "has recently been served with a Complaint in Foreclosure."  Wanda asserted  that, pursuant to the final decree, she is entitled to an order modifying her spousal support.  Wanda also sought attorney fees.

{¶ 4}   On June 14, 2011, Donald filed "Defendant's Motion to Dismiss Plaintiff's Motion for Contempt."  Therein he asserted that he "filed Chapter 7 bankruptcy, in the United States Bankruptcy Court, Case No. 11-30041, and was discharged on May 26, 2011."  Donald

further asserted: "In order to ensure the finality of awards, the Ohio Legislature in O.R.C. § 3105.18(E) **only** permits a court to modify the terms of an order of spousal support when each of the following conditions have been met: (1) there has been an order for spousal support, (2) the court specifically retained jurisdiction in the decree, and (3) where circumstances have changed." Donald asserted that he was not ordered to pay any spousal support, and "regardless of whether the court claimed to retain jurisdiction or the circumstances have changed drastically, the court does not have jurisdiction under O.R.C. § 3105.18(E) to modify the Decree, as it relates to spousal support." On July 20, 2011, Donald filed a "Memorandum in Support of Motion to Dismiss Claim for Spousal Support," in which he asserted that since the court did not order periodic payments of spousal support to Wanda, the court lacked jurisdiction to now establish spousal support.

{¶ 5} On July 20, 2011, an Agreed Order was issued which reflects that a hearing was held on the same day and that the matter was continued until August 24, 2011. On August 17, 2011, Wanda filed a "Response to Defendant's Motion to Dismiss Claim for Additional Spousal Support Payments." She asserted that the "court specifically retained jurisdiction over the issue of spousal support in case a situation like the current situation arose in addition to ordering that the Defendant Donald L. Ransdell pay $60,000.00, in spousal support * * *." Wanda asserted that the "circumstances have changed between the parties" due to Donald's failure "to refinance the marital real estate as ordered * * * which has caused the property to be foreclosed upon." Wanda asserted that she has been exposed to "ongoing financial difficulty, foreclosure proceedings, additional attorney fees for both domestic relations court and civil division * * *." Wanda asserted that the court has jurisdiction to establish spousal support, since the court

ordered a lump sum of spousal support, and since the the decree includes a provision authorizing the court to modify the amount or terms of spousal support. Finally, Wanda asserted that there has been a change of circumstances in that "she has currently paid over $1,500.00, in additional attorney fees defending the foreclosure. This foreclosure and any additional costs that she incurs will undoubtedly effect her credit because the Defendant failed to act pursuant to the court order and his agreements." Finally, Wanda asserted that the fact that Donald "has evidently filed and been granted a full Chapter 7 bankruptcy, thus exonerating himself from any debt associated with the marital residence, also now frees him up to make additional and ongoing spousal support payments * * *."

{¶ 6}   On February 7, 2012, the Magistrate issued a decision in which she noted that counsel for   Donald had withdrawn from the case and that Donald "was advised of his rights and knowingly and voluntarily signed the Advisement of Rights and Waiver of Counsel form which shall be filed herein." The decision provides that Wanda "made an oral motion to withdraw her contempt motion if [Donald] withdrew his June 14, 2011 motion." The Magistrate dismissed "without prejudice: (1) plaintiff's May 23, 2011 Motion for Contempt and Other Relief and (2) defendant's June 14, 2011 Motion to Dismiss Plaintiff's Motion for Contempt."

{¶ 7}   On March 5, 2012, Wanda filed a "Motion for Contempt and Other Relief." She sought "reasonable attorney fees of $1,500.00 for Steven E. Yuhas for the contempt proceeding and $4,000.00 for Brad Smith for the foreclosure litigation, as well as court costs and special process server fees of $370.00, due to [Donald's] failure to honor this court's orders." Wanda asserted that "after a recent 'short sale' [she] was finally advised by the bank mortgage holder that they would not at this time be pursuing her for the even larger unpaid balance on the note.

Movant's fees were incurred due to the foreclosure litigation that Movant should never have been a party to." Wanda sought spousal support pursuant to Paragraph 9 of the parties' final decree.

{¶ 8} A hearing was held on July 3, 2012 on Wanda's motion. Initially, Attorney Thomas Schiff testified on behalf of Wanda as to the reasonableness and appropriateness of the billing statements submitted to her by Attorneys Steven Yuhas and Brad Smith, as well as bills Wanda received for process serving and filing fees. Schiff testified that his fee is $250.00 for attending the hearing.

{¶ 9} Wanda then testified that she filed for divorce in May of 2009, and that Donald closed his trucking business shortly thereafter, but that he continued to operate his sign business. Wanda stated that she "honestly thought [the house] would be sold". She stated that she learned of Donald's bankruptcy 18 months after their divorce was final, and that up until that time, he was making the mortgage payment. She stated that she received notice from Fifth Third Bank in January, 2011 that the house payment was past due. Wanda stated that Donald filed for bankruptcy in March of 2011, and that she was not involved in that process. She stated that she bought a home in July of 2009 with the $60,000.00 she received from Donald, and that she placed the remainder of the purchase price of the home, $27,000.00, on a credit card. She stated that her payments remain current on her home. Wanda stated that as a consequence of the foreclosure on the marital residence, her homeowner's insurance has doubled and her "credit is absolutely ruined." Wanda identified her Progressive Insurance bill that she received in June, 2012 for $882.00 for one year; Wanda stated that in 2009, 2010 and 2011 she paid $449.00 per year for the insurance. The bill provides that the following criteria "has the largest impact in determining your insurance score: [o]ne mortgage account has been delinquent within the last 12

months."

{¶ 10} On cross-examination, Wanda stated that at the time of the parties' divorce, Donald did not have the financial ability to pay his business debts, and that the $60,000.00 he gave her came from his business. When asked if Donald could have used that money to pay his business debts, she responded, "That's correct." Wanda acknowledged that at the time Donald filed for bankruptcy, he owed more money on the marital residence than the property was worth. She stated that she believed the home was worth $80,000.00, and that Donald owed $87,000.00. Wanda identified, in the final decree, Donald's enumerated business debts which totaled over $150,000.00. Wanda stated that she has never made a payment for the marital residence after the divorce, and she stated that the mortgage holder is not trying to collect from her "because I hired an attorney to force him to do a short sale."

{¶ 11} The following exchange occurred on recross-examination

Q. Prior to the divorce did you meet with a bankruptcy lawyer?

A. I went in with him, yeah to hear what he was saying. That's correct.

* * *

Q. * * * do you remember the lawyer telling him that he should file bankruptcy?

A. With the information that Donald gave him, yes.

Q. * * * Do you believe that information was false?

A. I believe he could have - - he could have survived.

Q. My question is, do you believe the information he gave the bankruptcy lawyer was false or inaccurate?

A.  Inaccurate, yes, I kind of do.

Q.   And did you point that out to the bankruptcy lawyer?

A.  No, sir.   I sat and listened.

{¶ 12}    Donald testified as on cross-examination that he appeared for the parties' noncontested divorce hearing without an attorney.   He acknowledged his agreement, as reflected in the final decree, that the court retain jurisdiction to order additional spousal support if he failed to meet his obligations as set forth in the final decree. Donald identified his signature on the final decree and stated that he understood what he was signing, and that he chose not to retain an attorney.   Donald acknowledged that the final decree required him to refinance the marital residence within six months after the final decree was filed, and he further acknowledged that he continued to make the house payment for 18 months.   Donald testified that he attempted unsuccessfully to refinance the property.

{¶ 13}   Donald stated that at the time he closed his trucking business, Don Ransdell Trucking, he was "running" five tractors and seven trailers.   Donald testified as follows regarding his business:

* * *

I struggled all of 2009 already and most of 2008 due to the recession, due to the fact that the reason I bought the trucks were to hall (sic) loads from Chicago to California.   There wasn't a signed agreement.   I was supposed to get three loads a week.   We didn't get three loads a week.   We didn't get three loads a week, any week.   We were lucky to get two loads or one load, so we had to hall (sic) freight that was paying a dollar a mile.    It cost me $1.30 a mile to operate.

It finally caught up with me.

All the debt I had accumulated from the banks, I was trying - -when I bought the trucks, I didn't have the   - - the equity, or the capital is the word I was trying to say, to do that.  I thought that that fuel that I had from Chicago to Sacremento was going to be my salvation.  And then fuel prices - -or oil goes to $150 a barrel, fuel prices go to $5.00 a gallon, and the - - the tags were due and the insurance down payment was due, and I did not have the money.  That's why I closed the business when I did.

{¶ 14}  Donald testified that the mortgage payment on the marital residence was "$840 something."  Donald stated that he tried to sell the home on line when he quit making the payments, and that he believed it would sell.  Regarding the foreclosure, he stated, "I didn't get a lawyer to defend it, and I didn't pay anything out on the house and neither did [Wanda]."  Donald stated, "[Wanda] didn't incur any costs.  The fact that she ran to an attorney was her business * * *."

{¶ 15}  On direct examination, Donald testified as follows when asked about his "state of mind at the time you entered into the divorce":

As I stated earlier, I had just come to the conclusion that the business I put my blood, sweat and tears in for 30 years, I could no longer operate.  So I, my life, my world was turned upside down.  My life, as I knew it was over, and I knew that.  I knew it was inevitable that I was going to have to file bankruptcy.  The only reason I didn't file bankruptcy right away was to try to protect her.   I gave her the $60,000 in lieu of paying creditors that I well owed, and that money

should have went to them. And had I filed bankruptcy right away it would have went to them. But I was trying to protect her. * * * And I even paid her cell phone bill and her car insurance for over - - for 18 months, both of those things. I tried my best to keep her from having to go through what I went through and was going to have to go through. She kept her motorcycle and car. I had to - - I had to sell mine.

{¶ 16} Donald identified as Exhibit D a "Summary of Schedules" from federal bankruptcy court, which reflects assets of $98,430.00 and liabilities of $413,715.02. Donald stated that the liabilities were discharged by the bankruptcy court. He testified that at the time of the parties' divorce, his assets and debt were substantially the same as reflected in Exhibit D. He stated that at the time of the divorce, his trucking business was not profitable. He stated that he still has "a sign business" which generates income of $20,000.00 to $30,000.00 a year after expenses. Donald stated that he is unable to work because he has peripheral neuropathy in both legs.

{¶ 17} Regarding refinancing the marital residence, Donald testified that he "called Andy Roll who's the officer, a finance officer at Fifth-Third Bank," who had previously refinanced the property. Donald stated that after he "explained to him what was going on with the business and everything else, I mean, it was impossible, couldn't happen." Finally, Donald identified as Exhibit B, his federal income tax return for 2009, which reflects that his adjusted gross income was "-238,112," and Exhibit C, his federal income tax return for 2010, which reflects that his adjusted gross income was "-168,852."

{¶ 18} Pursuant to the Magistrate's request, Wanda filed "Plaintiff's Post-Hearing

Memorandum" on October 22, 2012, in which she asked the court to "issue an equitable order" that will allow her to pay attorney fees, court costs and filing fees in the amount of $4,807.50. She asserted that the court "has retained jurisdiction to modify spousal support due to a change in circumstances."

{¶ 19} Donald also filed "Defendant's Closing Argument" on October 22, 2012, in which he asserted in part that the "indemnity language [in the final decree] contains no mention of [Donald] indemnifying [Wanda] from legal fees." Donald further asserted that "all [he] was required to do was to 'use his best efforts' to refinance, which he did." Donald asserted that his failure to refinance, after attempting to do so, does not constitute contempt of court, since there "was not in 2009, 2010, 2011 or presently any lending institution that would refinance an $87,000 mortgage loan secured by a property valued at $95,400 under the circumstances that existed in this case," namely that his assets totaled $98,430.00 and his debts totaled $413,715, and he suffered significant loss of income over the last three years. Donald asserted that refinancing was "an impossibility." According to Donald, the "only debt that [Wanda] complains about is the mortgage debt, which went away as a result of the short sale. Hence, she was not made to pay any portion of it. Because [Wanda] was not denied any of the promised relief detailed in the Decree and because she has not been made to pay or become liable for any debts discharged by [Donald], this Court should not" order Donald to pay legal fees or spousal support. Donald asserted that the decree is clear that the parties are each responsible for their own attorney fees.

{¶ 20} A "Magistrate Decision and Permanent Order" was issued on January 15, 2013. Regarding Wanda's motion for contempt, the Magistrate determined that Wanda failed to prove

by clear and convincing evidence that Donald violated the court's orders as follows:

Plaintiff has failed to prove by clear and convincing evidence that Defendant violated this court's orders. The Decree ordered that the Defendant use his best efforts to refinance, and Defendant's testimony reveals that he did in fact attempt to refinance the House. To the extent that Defendant was unable to refinance the House and was unable to remove Plaintiff's name from the House, Defendant proved inability to comply with the court's order given the amount the House was worth; the amount owed on the House; and Defendant's dire financial condition during the divorce proceedings and after. This magistrate finds that the parties were well aware of Defendant's financial problems at the time of the divorce because the Decree thoroughly documents the fact that Defendant was contemplating bankruptcy at the time of the divorce and Paragraph Nine of the Decree even makes provisions for Plaintiff's reimbursement in the event he filed.

{¶ 21} Regarding spousal support, the magistrate determined as follows:

Here, Plaintiff incurred a significant amount of attorney fees in both this court and in a separate foreclosure action because Defendant failed to honor the promises he made in the Decree. Under the Decree, Defendant was to be solely responsible for the House. Defendant failed to make mortgage payments; refinance the loan; and remove Plaintiff's name from the mortgage. Defendant filed for bankruptcy, thus absolving himself of all financial responsibility for the mortgage. As a result, Plaintiff was left financially responsible for the mortgage. In short, Defendant's actions left Plaintiff holding the proverbial bag. Plaintiff

experienced significant financial hardship due to Defendant's actions. For example, she has a lower credit score than she had prior to the foreclosure; it [is] more difficult for her to obtain employment; and she now pays higher home insurance rates. Plaintiff's hardship could have been even worse if she had not hired a lawyer to represent her in the foreclosure action. With the help of the foreclosure lawyer, a short sale was eventually negotiated on the House. This magistrate finds that Paragraph Nine of the Decree provides a mechanism for remedying Defendant's failure to honor his obligations - paying additional spousal support.

* * * This court finds that Plaintiff has proven that the award of additional spousal support in the amount that Plaintiff expended in attorney fees and costs was appropriate and reasonable.

* * * Scant evidence was provided on the parties' income. However, Defendant testified that he cannot work because he has a knee injury. He further testified that he owns a sign business which earns between $20,000 and $30,000 a year after expenses. Therefore, after a review of the statutory factors in R.C. 3105.18 and relevant case law, the court orders, effective the date of filing this order, that the Defendant pay the Plaintiff monthly spousal support in the amount of $150.00 per month until the $4,807.50 is paid in full.

{¶ 22} Donald filed objections to the magistrate's decision on January 29, 2013, asserting that the Magistrate's decision requiring him to pay spousal support for Wanda's attorney fees is an abuse of discretion and contrary to law. According to Donald:

The Magistrate's errors in this case become clear once the case is reduced to its most simple elements. Because the Magistrate found [Donald] not to be in contempt of court, the Magistrate should not have ordered [Donald] to pay attorney fees that [Wanda] incurred in pursuing her motion for contempt. Husband's failure to comply with a Court order to indemnify [Wanda] from a debt, which resulted in [Wanda] having to pay, is a condition precedent to an award of spousal support in this case. Since the Magistrate found that [Donald] did not fail to comply with a court order, and because [Wanda] did not become liable for a debt that [Donald] was to pay, the Magistrate could not properly invoke the bankruptcy language in order to direct [Donald] to pay [Wanda's] attorney fees in the form of spousal support.

{¶ 23} On February 14, 2013, Wanda filed a pro se "Response to Objection to Magistrate Decision Support Thereof," (sic) in which she asserted, "I believe that the Magistrate's Decision is correct on all levels both legally and morally as she heard all the evidence that we both presented and was able to judge our credibility."

{¶ 24} In its "Decision and Judgment" the trial court, determined as follows:

The Court finds that as a result of [Donald's] inability to refinance the mortgage on the marital residence, the mortgagee, Fifth Third Bank, sued both the parties in foreclosure. In order to protect her interests, plaintiff hired attorney Bradley Smith to represent her in that action. Plaintiff testified that attorney Smith was instrumental in negotiating a short sale of the home. Through attorney Smith's efforts, the bank forgave both parties any deficiency resulting from the

short sale. * * * [Wanda] paid attorney Smith $2,807.50 for his services. * * *

The Court finds that [Wanda] has incurred financial damage due to ". . . other implications of actions taken by defendant . . ." Final Decree Paragraph 9 at 6. The Court finds that [Wanda] is entitled to reimbursement of those damages.

The Court further finds that because the contempt action was denied, there will be no award of attorney fees for that filing.

Under its equitable powers and consistent with the terms of paragraph 9 of the parties' final decree of divorce, the Court finds [Wanda] is entitled to an award of $2,807.50 for the financial damages due to [Donald's] bankruptcy action. [Donald] may discharge this obligation in the form of a modification of spousal support. [Donald] shall pay [Wanda] $150 per month until the balance of $2,807.50 is paid in full. Defendant shall make payments through the Montgomery County Support Enforcement Agency.

{¶ 25} Donald asserts two assignments of error herein, which we will consider together. They are as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING SPOUSAL SUPPORT WHEN THERE HAD BEEN NO SUBSTANTIAL CHANGE IN CIRCUMSTANCES THAT WAS NOT REASONABLY CONTEMPLATED AT THE TIME OF THE DIVORCE,"

And,

" THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES TO WIFE."

**{¶ 26}** R.C. 3105.18(E) provides in relevant part:

If * * * *a continuing order for periodic payments of money as spousal support* is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce * * * does not have jurisdiction to modify the amount or terms of the * * * spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:

(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support.

(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support. (Emphasis added).

**{¶ 27}** We believe that *Sieverding v. Sieverding*, 2d Dist. Montgomery No. 24549, 2012-Ohio-1238, is instructive. Therein, Michael Sieverding appealed from an order of the domestic relations court that modified his spousal support obligation as reflected in the parties' separation agreement, which was incorporated into their decree of dissolution. *Id.*, ¶ 1. The separation agreement provided for monthly payments of spousal support for 12 years, and it provided that the court retained jurisdiction over spousal support. *Id.*, ¶ 3. In a subsequent motion requesting an increase in the amount and duration of spousal support, Barbara Sieverding

alleged a change in financial circumstances. *Id*., ¶ 5. An Agreed Order was later filed and approved by the court that required Michael to pay $9,000.00 as spousal support. *Id*., ¶ 6. The Agreed Order further provided that the "obligation for spousal support shall terminate and the court does not retain jurisdiction." *Id*.

{¶ 28} Michael argued on appeal that the trial court lacked the authority to terminate its continuing jurisdiction previously invoked pursuant to R.C. 3105.18(E), even by agreement of the parties. *Id*., ¶ 8.

{¶ 29} This Court determined as follows:

The authorization which the separation agreement confers permitted the court to modify Michael's obligation to make periodic payments of spousal support and substitute a lump sum spousal support obligation instead. The practical effect of that modification was to exclude the possibility of any so-called reservation of jurisdiction, because *R.C. 3105.18(E) applies to an order for "periodic payments of money as spousal support," and therefore does not apply to lump sum awards.* R.C. 3105.18(E)(2) could not extend the court's jurisdiction to modify the lump-sum award in any event. The court's apparent intention to reject any continuing jurisdiction pursuant to R.C. 3105.18 * * * to modify its lump sum award therefore had no force and effect, and while it was an error, the error was harmless.

*Id*., ¶ 15 (Emphasis added).

{¶ 30} Pursuant to *Sieverding* and the plain language of R.C. 3105.18(E), we conclude that since R.C. 3105.18(E) refers to an order for "periodic payments of money as spousal

support," it does not apply to lump sum awards. Since the parties' final decree expressly provided for a "lump sum payment of spousal support of $60,000.00," and not "periodic payments of money as spousal support," Donald's spousal support obligation was not subject to modification, in amount or duration, pursuant to R.C. 3105.18(E).

**{¶ 31}** Having concluded that the trial court lacked jurisdiction to modify Donald's lump sum spousal support obligation, the judgment of the trial court is reversed and vacated.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Wanda Ransdell
Charles D. Lowe
Hon. Denise L. Cross